NOT DESIGNATED FOR PUBLICATION

No. 125,999

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

SARAH E. THARRETT, as Successor Trustee of the
ROXINE POZNICH REVOCABLE TRUST,
*Appellee*,

v.

DAVID T. EVERETT,
*Appellant*.

MEMORANDUM OPINION

Appeal from Bourbon District Court; ANDREA PURVIS, judge. Submitted without oral argument. Opinion filed May 3, 2024. Appeal dismissed.

*David T. Everett*, appellant pro se.

*Jacob T. Knight*, of Knight Law, LLC, of Iola, for appellee.

Before ARNOLD-BURGER, C.J., MALONE and WARNER, JJ.

MALONE, J.: David T. Everett appeals the district court's final order granting declaratory relief, which authorized the final distribution of a trust and ordered him to surrender $4,000 in attorney fees from his distribution to the trustee, Sarah E. Tharrett. On appeal, David raises several procedural challenges to the proceedings in district court and argues the court abused its discretion in granting Sarah's motion for attorney fees. But the record reflects that David, after being sent the final distribution check from the trust, which was calculated in accordance with the district court's final order, accepted the payment and negotiated the distribution check. Kansas law is clear: because David

1

voluntarily accepted the benefits of the district court's order, he cannot now take the inconsistent position of appealing from it. Because David has acquiesced to the district court's judgment, we lack jurisdiction over David's appeal and must dismiss the appeal.

FACTUAL AND PROCEDURAL BACKGROUND

Roxine Poznich died testate on November 3, 2020. When Roxine passed away, she had a revocable living trust, which had been executed on April 1, 2009, and amended on August 17, 2015. The beneficiaries of the trust were Roxine's five children: David Everett, Dwayne Everett, Sarah Tharrett, Fara Simon, and John Needham. The trust named Sarah as the successor trustee, and she assumed that role on November 23, 2020.

The trust specified that the inventory of Roxine's bookstore would pass to David, and he would be given first option to buy the property where the bookstore was located at a fair market value as appraised at the time of Roxine's death. The rest of the assets in the estate were to "be liquidated at public auction and the proceeds thereof and the proceeds from the sale of my business building be distributed to my five children, to be theirs absolutely, share and share alike." By May 2021, David grew dissatisfied with Sarah's actions as successor trustee, and he sued in an attempt to remove her from that role. Although no filings from the lawsuit are in the record on appeal, the parties agree that David's suit was dismissed in the summer of 2021.

On October 12, 2021, Sarah sent a final trust report, including an accounting and proposed distribution of the remaining trust assets to all the beneficiaries. All the beneficiaries, except David, executed releases acknowledging the trust report and approving of the final accounting, fees charged to the trust, administration of the trust by Sarah, and the proposed schedule of distribution. David raised several objections about the report and the disbursement schedule, which held up the closure of the trust.

On June 10, 2022, Sarah petitioned for declaratory judgment, naming David as the defendant. Sarah requested that the district court enter a declaratory judgment—under K.S.A. 60-1701 et seq. and K.S.A. 58a-201(c)—finding that she had acted within the terms of the trust and the Kansas Uniform Trust Code and authorizing her to distribute the trust estate as provided in the trust report. Sarah also asked the district court to assess the costs against David under K.S.A. 58a-1004, "as his actions and unfounded claims have necessitated the filing of this action to allow [her] to fulfill her duties as Successor Trustee and to wind up administration of the Trust according to its terms." Finally, Sarah asked the district court to authorize her to pay David's share of the trust to the clerk of the court pending any determination on her request for attorney fees against him.

In response to Sarah's petition, David filed several pro se pleadings. First, he filed an "Answer, Defense, and Counter Claims" and a "Motion to Dismiss For Failure to State A Claim Upon Which Relief Can Be Granted." In his answer, David asked the district court to open probate proceedings, requested court supervision of the administration of the trust, broadly raised a range of allegations against Sarah, and requested her removal as trustee. The motion to dismiss contained various arguments, including that Sarah lacked standing, that Sarah failed to plead an actual case or controversy, and that her requested relief was legally impossible. David later amended both pleadings. One of his added claims was that Sarah could not request attorney fees because she had been denied fees in the earlier case in which David tried to remove her as trustee. David also filed a motion for disqualification of Sarah's counsel in part because one of the firm's prior attorneys had briefly represented him in a criminal matter seven years before.

Over the next month, the parties filed a series of responsive motions, and we need not detail them all. On September 1, 2022, the district court held a motions hearing. At the start of the hearing, Sarah's counsel asked the court to reprimand or sanction David for engaging in "inappropriate behavior with regard to [the] journal entry." Sarah's counsel alleged that David had emailed Sarah and two court clerks when listing his

3

complaints to the proposed journal entry and noted that pro se litigants needed to follow the same rules as any other attorney. The district court declined to sanction David but reprimanded him for communicating directly with Sarah because she was represented by counsel. The hearing then turned to David's motion to disqualify counsel, which the district court denied without hearing additional evidence because the prior matter in which the law firm had represented David was not the same or substantially related to this case. The district court granted David's request to seek an interlocutory appeal of the denial of his motion to disqualify counsel and permitted David to file the journal entry for the motions hearing. There is no record that David ever filed the interlocutory appeal.

David filed a journal entry under Supreme Court Rule 170 (2024 Kan. S. Ct. R. at 234) and Sarah promptly objected, contending his proposed journal entry did not accurately reflect the district court's rulings at the September 1 hearing. The next month, after the parties failed to come to agreement over the journal entry, the district court held a status conference. After reviewing David's journal entry and Sarah's objections to it, the district court found that Sarah's objections were "accurate." The district court then ruled (1) that all pending motions were denied and dismissed; (2) that the trust could be closed; (3) that Sarah was released from her duties as trustee; (4) that the remaining funds from the trust would not be placed with the court but would be distributed from Sarah's attorney's trust account and sent to the beneficiaries via certified mail; and (5) that Sarah be awarded attorney fees in the amount of $4,000, which would be taken from David's portion of the distribution from the trust due to the "extraordinary services performed in defense of the estate" by Sarah's attorney in defending David's motions. The district court memorialized its ruling in a journal entry on November 22, 2022. David filed a notice of appeal on December 1, 2022, and he docketed the appeal on January 30, 2023.

On December 7, 2022, Sarah's counsel sent David a letter enclosed with a distribution check with a memo stating: "Full and Final Payment of Roxine Poznich Rev. Trt.," as well as a spreadsheet detailing the division of the trust assets and the district

4

court's final order. As detailed in the spreadsheet, David's check, which was for $2,572.03, matched the district court's ruling—it was an equal share of the trust estate, less the $4,000 that the district court ordered him to pay for Sarah's attorney fees.

On April 6, 2023, Sarah filed a "Notice of Acquiescence," informing the district court that David had acquiesced to the judgment "by knowingly and voluntarily accepting and negotiating the distribution check" from the trust. The notice included a scanned copy of the check showing that David had endorsed and negotiated the check without stating any reservation. David did not respond to the notice of acquiescence.

### DID DAVID ACQUIESCE TO THE DISTRICT COURT'S JUDGMENT?

On appeal, David argues: (1) The district court did not have jurisdiction to order him not to contact Sarah because she was being represented; (2) the district court abused its discretion by failing to remove Sarah as the trustee; (3) the district court abused its discretion by failing to disqualify Sarah's attorney; (4) he was denied due process; (5) the district court engaged in judicial misconduct because it was biased against him for proceeding pro se; and (6) the district court abused its discretion in awarding Sarah attorney fees. In response, Sarah contends that this court lacks jurisdiction because David acquiesced to the final judgment of the district court when he cashed the final distribution check. David's reply brief argues that Sarah failed to preserve the acquiescence issue; that the record does not support her assertion; that the district court's judgment was void; that the issues he raises are separable from the court's judgment; that his acceptance of the final distribution check was not voluntary; and that this court should give him greater leeway when considering whether he acquiesced because he represented himself.

The doctrine of acquiescence provides that a party cannot take the inconsistent position of challenging a judgment through an appeal after having already accepted either the burdens or benefits of that judgment. *Alliance Mortgage Co. v. Pastine*, 281 Kan.

5

1266, 1271, 136 P.3d 457 (2006). "[W]here a party is found to have acquiesced in the judgment of the trial court, appellate jurisdiction is lacking and the party's appeal must be dismissed." *Varner v. Gulf Ins. Co.*, 254 Kan. 492, 497-98, 866 P.2d 1044 (1994).

Acquiescence occurs when a party collects money obtained through a judgment—i.e., when they accept a benefit from the judgment—so long as they have unconditionally and voluntarily done so. *Uhlmann v. Richardson*, 48 Kan. App. 2d 1, 13, 287 P.3d 287 (2012). Likewise, it is inconsistent to receive a distribution of a judgment and then claim on appeal that the judgment was insufficient. *Troyer v. Gilliland*, 247 Kan. 479, 481, 799 P.2d 501 (1990). A party may not accept the benefits of a money judgment and then appeal "in the hope of obtaining greater damages on the same claims." *Hemphill v. Ford Motor Co.*, 41 Kan. App. 2d 726, 732, 206 P.3d 1 (2009).

That said, even when a party makes or accepts a partial payment on a judgment, acquiescence will not be found "'so long as the issues on appeal cannot affect the payments made or burdens assumed and such payment or burden is not involved in the issues on appeal.'" 41 Kan. App. 2d at 732. And because implied waivers are not favored, acquiescence should only be found where a party's actions "'"clearly and unmistakably show an inconsistent course of conduct or an unconditional, voluntary and absolute acquiescence."'" *Uhlmann*, 48 Kan. App. 2d at 17 (quoting *James v. Amrine*, 157 Kan. 397, 403, 140 P.2d 362 [1943]). Also, "it is generally the rule that a waiver [will] not [be] implied from measures taken by an appellant in defense of and to protect his rights or interest." *McDaniel v. Jones*, 235 Kan. 93, 104, 679 P.2d 682 (1984).

Whether a party acquiesced to a judgment is a question of law subject to unlimited review. *Alliance Mortgage Co.*, 281 Kan. at 1271. Because acquiescence involves jurisdiction, the issue may be raised at any time, including on appeal or on the court's own motion. See, e.g., *Vorhees v. Baltazar*, 283 Kan. 389, 397, 153 P.3d 1227 (2007).

6

Sarah contends that David acquiesced when he accepted the benefits of the district court's final order by cashing the distribution check, which was paid to him consistent with the order. She argues that David voluntarily took this action with the understanding of what the check represented—that is, that he knew the district court had approved the final distribution of the trust, her administration of the trust, and had ordered him to pay $4,000 in attorney fees from his portion. She also maintains that he was not coerced into accepting the payment, nor did he do so to protect his interests.

Based on the copy of the endorsed check Sarah has included in the record, it appears that David accepted—either by cashing or depositing—the $2,572.03 distribution check, which was calculated consistent with the district court's final order. Because David accepted a benefit or a burden of the district court's order, he acquiesced to the judgment unless an exception to the doctrine of acquiescence applies. Based on the arguments made by the parties, we will examine three possible exceptions that may prevent David's appeal from being dismissed under the doctrine of acquiescence: (1) whether the issues raised on appeal are separable from the judgment; (2) whether David was coerced or otherwise accepted the check involuntarily and, relatedly; (3) whether David was forced to accept the distribution check as a form of self-protection.

*Separability*

The Kansas Supreme Court has explained that when a party to an appeal accepts payment of the judgment as directed by the district court, that party shall not be deemed to have acquiesced in the judgment when the issues on appeal do not affect the obligation for the payment or the right to receive that portion of the judgment. *McDaniel*, 235 Kan. at 101-02. In other words, if the issues raised on appeal are separable from the judgment, an appellant's acceptance of payment does not necessarily equate to acquiescence. But the separability exception is generally only applicable when a judgment consists of distinct parts, so that acquiescence to one portion does not affect another. See, e.g., *Wollard v.*

7

*Peterson*, 145 Kan. 631, 633, 66 P.2d 375 (1937) (payment of principal amount of judgment was not acquiescence where appeal only challenged interest and attorney fees).

David has raised six issues in his appeal, five of which directly challenge procedural defects or deficiencies in the district court's order. These procedural issues are directly tied to the distributions that have already been made from the trust—any favorable ruling on appeal for David would affect the payment that he and the other beneficiaries received from the trust as ordered by the district court. David contends that the issues he raises in his appeal are separable from his acceptance of the distribution check because he was entitled to receive a portion of the trust funds regardless of the district court's judgment. But David fails to recognize that his right to receive a portion of the estate was never in dispute—only the amount he would receive from the trust was disputed. As noted, a party cannot accept a payment as ordered in a judgment and then appeal in an attempt to obtain a bigger payment. See *Hemphill*, 41 Kan. App. 2d at 732.

The only other issue David raises on appeal challenges the district court's award of attorney fees in Sarah's favor, which effectively reduced the distribution payment he accepted by $4,000. But this issue is plainly inseparable from the district court's judgment—if this court were to rule in his favor it would directly affect the obligation for payment from the trust, which has at this point been entirely distributed, and would require a redistribution of the trust assets to the other beneficiaries. Because the issues David raises on appeal directly affect both the payment made to him and the overall distribution of the trust to the other beneficiaries, the issues are not separable.

*Coercion/Voluntariness*

As noted above, acquiescence to a judgment occurs only when a party voluntarily complies with a judgment. See *Uhlmann*, 48 Kan. App. 2d at 13. David argues that his acceptance of the distribution check was not voluntary because he was forced to do so in

8

the face of Sarah's attorney's alleged fraudulent actions and Sarah's own economic threats. But David's fears and allegations that Sarah's attorney stole, or was planning to steal, funds from the trust account are not supported by the record. Likewise, the record does not support any claim that Sarah coerced David to accept the check. David's allegations about how Sarah and her attorney would have acted are not enough to display coercion and do not render his decision to endorse and negotiate the check involuntary.

David accepted the distribution check with full knowledge that the amount he was accepting represented the district court's judgment regarding Sarah's administration of the trust as well as its determination that his distribution should be reduced by $4,000 in attorney fees that Sarah incurred in defending his fruitless litigation. David knew what the check represented as Sarah's attorney attached a letter explaining the check and a spreadsheet documenting its calculation. David could have, but chose not to, contest the amount of his distribution, but if he desired to do so he should not have accepted the payment. Alternatively, he could have moved for a stay from the district court pending this appeal. He did not do so. Instead, he knowingly and voluntarily accepted the monetary benefit of the district court's judgment that he is now contesting on appeal.

*Self-protection*

Finally, appellate courts generally will not find that a party has acquiesced to a judgment where the actions that could amount to acquiescence were taken in defense of and to protect their rights or interests. *McDaniel*, 235 Kan. at 104 (describing how judgment debtor does not acquiesce by redeeming property after foreclosure sale). Here, the only potential ground of self-protection is David's concern that Sarah's attorney would pilfer his share of the trust if he did not immediately accept the funds from the trust account. But, as discussed above, there is no basis in the record to support this threat. Moreover, David's decision to accept the distribution check and either deposit or cash it

did not protect his legal rights or interests. Because David's actions were not taken as an act of self-protection, this exception to the acquiescence doctrine does not apply.

Finally, David presents an overarching plea to this court to treat his actions differently because he is a pro se litigant. But Kansas courts have consistently held that a pro se litigant in a civil case must follow the same rules of procedure and evidence as a party represented by counsel. "To have different rules for different classes of litigants is untenable. . . . A pro se litigant in a civil case cannot be given either an advantage or a disadvantage solely because of proceeding pro se." *Mangiaracina v. Gutierrez*, 11 Kan. App. 2d 594, 595, 730 P.2d 1109 (1986). That David is a pro se litigant is of no import regarding whether he acquiesced to the district court's judgment.

The record establishes that David voluntarily accepted the distribution payment from the trust based on the district court's final order. That act conflicts with his position on appeal, and the issues he raises are not separable from the district court's judgment. Because David acquiesced to the district court's judgment, we lack appellate jurisdiction and must dismiss his appeal. See *Varner*, 254 Kan. at 497-98.

SHOULD THIS COURT AWARD EITHER SARAH OR DAVID ATTORNEY FEES?

Both parties have filed motions with this court to recover appellate costs and attorney fees. David asks this court to order Sarah to pay for his filing fees, docketing fee, and the costs of preparing transcripts in the amount of $314—he provides no rationale or authority to support his request. Sarah filed a motion under Supreme Court Rule 5.05(c) (2023 Kan. S. Ct. R. at 33) and Supreme Court Rule 7.07(c) (2023 Kan. S. Ct. R. at 52) for expenses and attorney fees on appeal in the amount of $2,250. But our Supreme Court has held that the court lacks jurisdiction to consider a request for appellate costs and attorney fees—from either the appellant or the appellee—when the appeal is dismissed for lack of jurisdiction. *Kaelter v. Sokol*, 301 Kan. 247, 250, 340 P.3d 1210 (2015); *In re*

10

*X.L.*, 63 Kan. App. 2d 853, 867, 540 P.3d 369 (2023) (following *Kaelter*). The Kansas Court of Appeals is duty bound to follow Kansas Supreme Court precedent unless there is some indication that the Supreme Court is departing from its previous position. *State v. Patton*, 315 Kan. 1, 16, 503 P.3d 1022 (2022). We have no such indication here. Thus, we lack jurisdiction to consider either party's request for appellate costs and attorney fees.

Appeal dismissed.

\* \* \*

ARNOLD-BURGER, C.J., concurring: I concur with the majority opinion in this case and write separately only to address the issue of attorney fees on appeal when a case has been dismissed for lack of jurisdiction. Here, we have found that David Everett pursued this appeal after acquiescing in the judgement. I agree that we are bound to follow Supreme Court precedent and our Supreme Court has clearly held that the court lacks jurisdiction to consider a request for appellate costs and attorney fees—from either the appellant or the appellee—when the appeal is dismissed for lack of jurisdiction. *Kaelter v. Sokol*, 301 Kan. 247, 250, 340 P.3d 1210 (2015). But I simply question from whence this blanket judicial rule originated.

Supreme Court Rule 7.07(b) (2024 Kan. S. Ct. R. at 52) allows this court to assess attorney fees in any case in which the district court had authority to enter attorney fees. In addition, it allows us to assess a reasonable attorney fee if we find the appeal is frivolous or taken for the purposes of harassment or delay. Supreme Court Rule 7.07(c). As the Trustee points out in her motion for attorney fees, the Kansas Uniform Trust Code specifically provides that "[i]n a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, including reasonable attorney fees, to any party, to be paid by another party or from the trust that is the subject of the controversy." K.S.A. 58a-1004. Yet, according to the blanket finding in *Kaelter*, if we find that we lack jurisdiction to hear the appeal, our

11

hands are tied even though a party had to go to significant expense to defend the action. This judicial rule also seems to be in direct conflict with Supreme Court Rule 5.05(c) (2024 Kan. S. Ct. R. at 33) which allows this court to assess against the appellant the costs and expenses incurred by the appellee before the dismissal date "that would have been assessed against the appellant if the case had not been dismissed and the judgment or order had been affirmed." The rule in *Kaelter* appears to render meaningless Rule 7.07, Rule 5.05, and K.S.A. 58a-1004, yet our court has continued to follow it as we are bound to do. See *In re X.L*, 63 Kan. App. 2d 853, 867, 540 P.3d 369 (2023).